### A99A0061. TUKES v. THE STATE.
(511 SE2d 534)

ELDRIDGE, Judge.

Following a bench trial in the Superior Court of Butts County, the trial judge found Norbert Tukes guilty of trafficking in cocaine. He appeals from the conviction, and we affirm.

1. Tukes first contends that the stop of his vehicle was unsupported by probable cause. We disagree.

The record shows that the arresting officer in this case was on routine traffic patrol. The officer passed Tukes' car going in the opposite direction, and he observed that Tukes was not wearing a seat belt. The officer turned around and followed Tukes' vehicle. He observed that Tukes' county decal was partly obscured by the license plate's frame. As the officer followed Tukes' car, the vehicle "drifted from — turned from the slow lane to the middle lane in traffic, vehicles coming up from the rear traveling to his left and then went back into the slow lane without signaling." The officer then conducted a traffic stop.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. [Cits.]" *Whren v. United States*, 517 U. S. 806, 810 (116 SC 1769, 135 LE2d 89) (1996); *Hines v. State*, 214 Ga. App. 476, 477 (448 SE2d 226) (1994). In this case, any one of the traffic violations observed by the officer would have provided probable cause to effectuate a stop of Tukes' car.[1]

Moreover, "[a] trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. [Cit.]" *Hobdy v. State*, 222 Ga. App. 625, 626 (475 SE2d 686) (1996). The trial court specifically found that the traffic stop was not pretextual and that there were other vehicles in the immediate area of Tukes' vehicle when he made the unsafe lane change without using a signal. Compare *Bowers v. State*, 221 Ga. App. 886, 887-888 (473 SE2d 201) (1996). As these findings are supported by the record, the trial court's denial of the

---

[1] See OCGA §§ 40-8-76.1; 40-2-31 (e); 40-6-123 (b); *Buffington v. State*, 229 Ga. App. 450 (494 SE2d 272) (1997); *Temples v. State*, 228 Ga. App. 228 (491 SE2d 444) (1997). See also *State v. Wright*, 221 Ga. App. 202, 204 (3) (470 SE2d 916) (1996).

motion to suppress based upon an allegedly improper traffic stop was not clearly erroneous.

2. Next, Tukes challenges (a) the search of his person as exceeding the scope of a *Terry*[2] search, and (b) the seizure of the cocaine as pursuant to an illegal arrest. This challenge is meritless.

After the proper stop of Tukes' vehicle, the officer approached the car and asked Tukes for his license and proof of insurance. Tukes was "acting real fast, his speech was kind of nervous and stammering." As the officer looked through the driver's window, he immediately saw a large, bulky object protruding from the inside of Tukes' pants and covered by his shirt; the object was apparent even when Tukes was sitting behind the wheel of the car. The officer testified that "I thought I was looking at something that Mr. Tukes was so concerned about that he had to hide it under his pants and that I realized that the possibilities are endless. The major safety concern would be a weapon, but it could be contraband, it could be other." The officer asked Tukes to exit the vehicle.

From the record it appears that Tukes is an obese man, and the bulge from the concealed object became "very obvious" when Tukes exited the car. The object bounced when Tukes walked. The officer asked Tukes if he was concealing something in his pants, and Tukes replied "no." The officer knew this to be a lie. The officer patted the bulging object. The nature of the object as contraband became immediately apparent to the officer. The officer testified that, while he could not narrow down the specific drug concealed in Tukes' pants, he knew that the concealed object was contraband based on: (1) his many years of experience in recognizing and recovering contraband; (2) Tukes' nervous demeanor; (3) Tukes' obviously false assertion that an object was not concealed in his pants; (4) the package-like feel of the object; and (5) the fact the officer had "encountered similar bulky objects like that[.]"

Thereafter, the officer secured Tukes with handcuffs. From Tukes' pants, the officer removed a taped package containing 237.7 grams of 81 percent pure cocaine.

(a) "[A] law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." (Citations and punctuation omitted.) *Hodges v. State*, 217 Ga. App. 806, 808 (2) (460 SE2d 89) (1995).

We find that the officer's initial observation of the bulky object so obviously concealed in Tukes' pants while Tukes was still behind the wheel, together with Tukes' nervous demeanor, provided a sufficient

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

basis for the officer to remove him from the vehicle and conduct a patdown of his person for the officer's safety. *Thompson v. State*, 230 Ga. App. 131, 132-133 (495 SE2d 607) (1998). Thus, in this case, the *Terry* patdown was lawful.

Further, under what has been deemed the "plain feel" doctrine, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U. S. 366, 375-376 (113 SC 2130, 124 LE2d 334) (1993); *Seaman v. State*, 214 Ga. App. 878 (449 SE2d 526) (1994). Accordingly, contraband identified through an officer's sense of touch in the course of a lawful *Terry* patdown may be seized. *Howard v. State*, 220 Ga. App. 579, 581-582 (469 SE2d 746) (1996).

Here, the officer testified that, based upon his experience as well as the other factors enumerated above, he knew immediately on touching the bulky object concealed in Tukes' pants that the object was contraband. It was unnecessary for the officer to "conclusively identify" what type of drug Tukes was carrying in order for the "plain feel" doctrine to make the seizure of the contraband lawful. Id. at 582. "Under the 'plain feel doctrine,' the officer was entitled to seize the item and the evidence was properly admitted. He was not compelled to ignore what was apparent to him upon feeling the object and to walk away instead. [Cits.]" *Andrews v. State*, 221 Ga. App. 492, 493 (471 SE2d 567) (1996). The trial court determined that the seizure of the cocaine was lawful. Based on the record, we do not find such determination clearly erroneous, and the motion to suppress was properly denied.

(b) Contrary to Tukes' assertion, under the facts of this case, it was proper for the officer to secure Tukes prior to retrieving the contraband from his clothing. Assuming, without deciding, that Tukes was arrested when the officer secured him, the officer knew that Tukes was concealing contraband. "A warrantless arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense." (Citations and punctuation omitted.) *Brown v. State*, 190 Ga. App. 38, 40 (378 SE2d 357) (1989). By its nature, knowledge sufficient to satisfy the "plain feel" doctrine, i.e., knowledge that a concealed object is contraband, provides sufficient probable cause to arrest. In this case, "[t]he facts and circumstances within the knowledge of the officer[ ] were sufficient to war-

rant a prudent man in believing that [Tukes] had committed an offense. [Cits.]" *Clark v. State*, 212 Ga. App. 486, 487-488 (441 SE2d 885) (1994). There was no error.

3. As the officer turned Tukes around in order to secure him with handcuffs, he referenced the package concealed in Tukes' pants, asking "Marijuana?" Tukes allegedly replied "Cocaine." Tukes contends that this statement was made without benefit of *Miranda*[3] warnings and thus was improperly admitted at trial.

Even assuming that the above statement could be considered an in-custody statement made without benefit of *Miranda*, we do not find reversible error in its admission. Immediately after the statement was made, the officer determined that the concealed package contained cocaine, thereby making the statement simply cumulative of that inevitable discovery. Further, since the cocaine was recovered from the inside of Tukes' pants, the contested statement was also cumulative as to knowledge and intent. Accordingly, "[t]his enumeration provides no grounds for reversal as any error in admission of these statements was not only cumulative of other admissible evidence, it is harmless because of overwhelming evidence of defendant's guilt." (Citation omitted.) *Wright v. State*, 216 Ga. App. 486 (455 SE2d 88) (1995).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 25, 1999 —

*Carey & Dobson, Emerson Carey, Jr., Garland & Milam, Richard G. Milam*, for appellant.

*Tommy K. Floyd, District Attorney*, for appellee.

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).